# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0556
Filed May 27, 2026

———————————

**FS, Inc.,**
Plaintiff–Appellant,

v.

**Jefferson County Conservation Board,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Jefferson County,
The Honorable Shawn Showers, Judge.

———————————

**AFFIRMED**

———————————

Frederic C. Hayer (argued) of Aspelmeier, Fisch, Power, Engberg &
Helling, P.L.C., Burlington, attorney for appellant.

Chauncey Moulding, Jefferson County Attorney, and Edwin F. Kelly
(argued), Assistant Jefferson County Attorney, Fairfield, attorneys for
appellee.

———————————

Heard at oral argument
by Schumacher, P.J., Chicchelly, J., and Bower, S.J.
Opinion by Bower, S.J.

1

**BOWER, Senior Judge.**

FS, Inc. (Four Seasons) appeals from an adverse breach-of-contract ruling. Following our review, we affirm.

## I. Background Facts & Prior Proceedings

After the Jefferson County Conservation Board (the Board) secured funding to develop campgrounds, the Board requested bids from contractors to complete the project. The notice to bidders required bidders to put up a ten percent bid bond along with the performance bid. *See* Iowa Code § 26.8 (2024). The performance bid and bid bonds were to be opened at a regularly scheduled public meeting on February 28, 2024.

At the meeting, the bids were opened, including a bid submitted by Four Seasons. Four Seasons had the lowest bid. However, it was accompanied by a bid bond of five percent instead of the required ten percent. No one initially noticed that issue, and the Board indicated Four Seasons would be selected to complete the project, pending engineer review of the bid.

The engineer noticed Four Seasons' bid bond was insufficient and deemed the bid itself to be non-responsive as a result. The Board ultimately contracted with the company that provided the next lowest bid with a ten percent bid bond.

Four Seasons then brought this action against the Board claiming breach of contract and seeking compensation for lost profits. It sent a request for admissions regarding thirty statements to the Board. But the Board failed to file a timely response to the request or move for permission to file a late response to the request for admissions. As result, Four Seasons sought summary judgment, arguing that all the requests for admissions were

admitted under Iowa Rule of Civil Procedure 1.510(2). The Board also sought summary judgment. The district court deemed the request for admissions admitted given the Board's failure to file a timely response but denied the motions for summary judgment.

The matter proceeded to a bench trial, where Four Seasons objected to the Board's presentation of any evidence contrary to the thirty admitted statements. The thirty admissions are as follows:

1. "Multiple contractors who had submitted bids relating to the Prairie Ridge Campground Project (the 'Project') were present at the Board meeting held on February 28, 2024."

2. "Four Seasons' bid was opened at the February 28, 2024 Board meeting."

3. "After Four Seasons' bid was opened at the February 28, 2024 Board meeting, the amount of the Four Seasons' bid bond was readily ascertainable."

4. "The Board has at all relevant times considered Four Seasons to be sufficiently qualified and able to perform the contract for the Project if it was awarded to Four Seasons."

5. "At the February 28, 2024 Board meeting, the Board accepted Four Seasons' bid."

6. "At the February 28, 2024 Board meeting, the Board never determined that Four Seasons' bid was non-responsive."

7. "After the February 28, 2024 Board meeting, the Board refused to execute a contract for the Project with Four Seasons on the ground that Four Seasons' bid was non-responsive."

8. "The Board's determination that Four Seasons' bid was non-responsive was based solely on Four Seasons' bid bond being five percent."

9. "The Board has accepted the bid of Leffler Dirtworks, LLC to perform the work on the Project."

10. "The bids of Four Seasons and Leffler Dirtworks, LLC each provide for the same exact work to be completed in constructing the Project."

11. "After the Board's acceptance of Four Seasons' bid, Four Seasons did not have the right to withdraw its bid without forfeiting its bid bond."

12. "Had the Board and Four Seasons entered into a formal contract for the completion of the Project with Four Seasons providing the proposed performance bond for the Project, any discrepancy regarding the amount of the bid bond would have been of no concern to the Board."

13. "The Board is the only entity responsible for paying for the Project."

14. "After the February 28, 2024 Board meeting, the Board failed to offer Four Seasons a contract for the Project."

15. "After the February 28, 2024 Board meeting, the engineer completed a review of the Four Seasons' bid."

16. "After the February 28, 2024 Board meeting, Four Seasons acted in good faith in relation to the Board and the Project."

17. "After the February 28, 2024 Board meeting, Four Seasons did not prevent satisfaction of any conditions relating to the Project which may have existed."

18. "A five percent bid bond is not in violation of any Iowa statute."

19. "The amount of the bid bond with respect to the Project would not change in any way the work was to be completed as part of the Project."

20. "The amount of the bid for the project by Leffler Dirtworks, LLC was $890,469—which is $82,025 more than Four Seasons' bid for $808,444."

21. "If the Board allows Leffler Dirtworks, LLC to complete the Project, it will be obligated to pay $82,025 more than what Four Seasons bid to complete the Project."

22. "The public would not have been prejudiced had the Board allowed Four Seasons to post a performance bond and complete the Project according to its bid."

23. "Four Seasons' bid conforms in all material respects to the actual construction work proposed in the Board's Notice to Bidders for the Project."

24. "The Board had full authority to award the contract for the Project and did not require the approval of any other person, individual, agency, or entity."

25. "The submission of a lower bid bond does not give a bidder a substantial advantage or benefit not enjoyed by other bidders."

26. "The people of Jefferson County would benefit if the Board could have the Project completed for less money."

27. "Ben Brueck, President of Four Seasons, was present at the February 28, 2024 meeting when the Board accepted Four Seasons' bid."

28. "Four Seasons's bid addressed all material terms relating to the construction of the Project."

29. "No further material terms relating to the construction of the Project beyond the terms contained in Four Seasons' bid remained to be negotiated after February 28, 2024."

30. "On February 28, 2024, the Board assented to the material terms relating to the construction of the Project as contained in Four Seasons' bid."

The district court agreed that these statements were deemed admitted as the law of the case under the prior summary judgment ruling. However, the court allowed the Board to present evidence, some of which conflicted with the admissions. The district court found the Board's acceptance of Four Seasons' bid was conditioned on approval by an engineer. And it ultimately concluded the parties never entered an enforceable contract, noting that even

6

if the Board breached an enforceable contract, Four Seasons' evidence of damages was too speculative.

Four Seasons appeals.

## II.     Standard of Review

Because this breach-of-contract claim was tried at law to the district court, we review for correction of legal error. *See NevadaCare Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). "[T]he district court's findings of fact are binding on us if they are supported by substantial evidence." *Id.* But we are not bound by the district court's application of legal principles or its resulting legal conclusions. *Id.*

## III.    Discussion

The crux of Four Seasons' argument is the Board accepted Four Seasons' bid and formed a binding contract at the February 28 meeting. *See Horsfield Constr., Inc. v. Dubuque Cnty.*, 653 N.W.2d 563, 568–69 (Iowa 2002) (recognizing "[a] bid generally constitutes an offer" and "[o]nce a municipality accepts a valid bid, such acceptance results in a binding contract, 'even though there have been defective compliance with certain legal formalities'" (citations omitted)). It points to admission number five: "At the February 28, 2024 Board meeting, the Board accepted Four Seasons' bid." And it reasons that the district court erred in admitting any evidence to the contrary. *See* Iowa R. Civ. P. 1.511 ("Any matter admitted under rule 1.510 is conclusively established in the pending action unless the court on motion permits withdrawal or amendment of the admission.").

But even if we conclude admission five conclusively established the Board accepted Four Seasons' bid to form a binding contract, that alone does

7

not entitle Four Seasons to relief. To obtain relief on its breach-of-contract claim, Four Seasons must prove all the following:

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the [Board]'s breach of the contract in some particular way; and (5) that [Four Seasons] has suffered damages as a result of the breach.

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). And the district court correctly determined that Four Seasons cannot establish the last requirement, damages.

"Damages are denied where the evidence is speculative and uncertain whether damages have been sustained." *Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998). Absolute precision is not required when establishing the amount of damages because "some speculation is acceptable." *Id.* But "overly speculative damages cannot be recovered." *Id.*

Here, Four Seasons seeks damages for the profit it would have made had it completed the construction project. It contends that it is entitled to twelve percent of its bid price as damages. However, the only evidence of damages presented was the testimony of its president. He explained that Four Seasons' construction projects could have a profit of anywhere between five to twenty-five percent, though "the sky's the limit." But he testified to an anticipated twelve-percent profit on this project at minimum or more. And he testified the anticipated profit was built into each line item in Four Seasons' bid.

But the problem is Four Seasons' president was just speculating as to the potential profits it hoped to make on the project.[1] Construction work has

---

[1] At oral arguments, Four Seasons highlighted *Boyle Built Enterprises, LLC v. Benson*, No. 24-0021, 2026 WL 892478, at *1 (Iowa Ct. App. Apr. 1, 2026), a recent case

8

several variables that impact a project's overall profitability. And while we understand it would be impossible for Four Seasons to be exacting when establishing damages, it left too much uncertainty. It did not provide any evidence of the ascertainable costs. For example, it did not provide the cost of materials or the cost of equipment. Without some evidence of costs of the project, the president's twelve-percent estimate is entirely speculative. And even the estimate was not definitive given the president testified construction project profits commonly fall within a range differing by up to twenty percent (five to twenty-five percent). Finally, he never explained how or why he reached his twelve-percent estimation. Accordingly, his estimate leaves too much to question.

We agree with the district court—the damages estimate presented by Four Seasons is overly speculative and cannot be recovered. As Four Seasons cannot establish the last element of a breach-of-contract claim, *see Molo Oil Co.*, 578 N.W.2d at 224, we affirm.

**AFFIRMED.**

---

from our court concerning, in part, lost profits. But we find the current appeal distinguishable on the facts as to the evidence supporting lost profits.